This is number 13-13-19, LINK SNACKS, Incorporated, against the United States. Mr. Garver. Thank you, Judge Newman, and may it please the Court. The central error committed by the Court of International Trade in this case is it simply failed to engage in the analysis called for by this Court's decision, Camelback Products v. United States. Like the government, the Court of International Trade placed all its weight on the fact that the subheading at issue in this case is an AO nominee provision, and the general rule is that all forms of the item are covered by that provision. But, and here's the critical part, the Court of International Trade never looked to whether or not the subject article, in this case, beef jerky, had features substantially in excess of those described in the subheading for cured meat. If it had done that, it would have discovered that beef jerky is a fundamentally different product than your commonly cured meat like a hot dog or ham or bacon, and that it has characteristics that take it out of the AO nominee provision, specifically two. One, it's dried as opposed to moist character. Beef jerky is a dried beef product. It has to be under the USDA regulations. Your typical common cured meat like a hot dog is a very moist product. And to Mr. Garr, of course we're talking about preserved meat. I have no beef with your argument, except the heading that you're looking for has no beef. It's simply other, and what the customs applied was cured, cured, and so you're comparing something with nothing, cured versus other, and you can't beat something with nothing. And cured beef seems to be AO nominee. I think you're quite right that that was the court's analysis, Your Honor, and we think that's wrong for several reasons. One, it's not uncommon for the courts to have to choose between one subheading and a basket provision like other. That was the case in the ARCO decision of this court, which involved Mallory in the question of even though it included milk, and there was a heading for of milk, whether it nevertheless fell in the other category, which this court held. Here, the question is, you're quite right, does the fact that beef jerky is cured as part of one intermediate step mean that it has to go within that subheading, even though it undergoes another process, dehydration, that fundamentally changes the character of that product? And the answer under this court's decision in Camelback is that fact takes it outside of the AO nominee provision. And Camelback is precisely on point. That case involved an AO nominee provision for backpacks. And the question was, even though we could recognize as a literal matter the article in that case, a backpack with a hydration component was a backpack, did it come outside of that AO nominee provision because the hydration component fundamentally changed the identity of that article? And the court said correctly, yes, it did. And it answered the question that arises from the Court of International Trade's decision in this case, whether it's enough to stop at the AO nominee provision. And it says that, no, it's not. You have to perform this other analysis. And I think the critical part of the Court of International Trade's decision is page nine of the decision, where the court actually recognizes that the dehydration process may change the identity of the subject article, beef jerky. It says it may specifically be defined by the dehydration process, but it nevertheless says that it has to fall within the subheading procured because that's an AO nominee provision. That was wrong in the Camelback analysis. Well, remind me, because I've forgotten now, Camelback, what was the category in which the court over a percent concluded that the... There were a couple of categories, Your Honor. One was insulated bags and other, and the court reversed the GRI-1 determination that it had to fall within backpack because it literally was a backpack and remanded for a GRI-3B determination. Which of the other specific categories? In this case? In Camelback. Well, in Camelback, the other category was insulated bag other. And Camelback's bag was insulated. It was insulated, that's right. So that seems to me to be, again, going back to Judge Lurie's question, it seems to me a difference between this case and Camelback that's very important. If there had been a category, let's say, of dried meat as well as a category of cured meat, then you could well say, well, it's really more dried than it is cured. But when you've just got the pure, simple basket of other, then it seems to me, in effect, what you've got, or at least tell me why this is wrong, what you've got is a situation in which all cured meats are going to go under cured meat. If there's no other specific category for them to go under, and if they're not cured, they go into other. Why is that the right way to look at it? I think the reason why we think that that's not the right way to look at it, Your Honor, is one, it would deprive the meaning of the basket provision, which is a common provision in the tariff provisions. And the very fact that they have this other category, it's designed to cover articles that don't fall within the other categories. But this is cured. I mean, everybody agrees this is beef and it's cured, and your argument is it's not cured beef. Well, Your Honor, our argument is that even though it's gone through the curing process, it has features substantially in excess of commonly cured meat. And that's the way this Court looked at it in the Camelback. Just as you would say wine is grape juice, but the fact that it's fermented creates a fundamentally different product. Or butter. Butter starts off as whipped cream. You wouldn't say that a piece of butter is whipped cream, even though it was whipped cream as part of the process. Are you saying that this material is no longer cured? No, it is. It has been subject to curing, Your Honor. We don't dispute that. But I think the legal question that the CIT didn't look at is whether or not the subject article, beef jerky, nevertheless has features substantially in excess of commonly cured meat. And it does. What you're asking is, well, how do you compare the beef jerky to a hot dog? A hot dog is something that is highly perishable, is going to spoil if it's not put in the refrigerator, and that is extremely moist by its moisture-to-protein ratio. Beef jerky is fundamentally different, and that is, by definition, a dried meat, and you can leave it outside for a year and a half, and it's not going to spoil. And it has fundamentally different uses. Beef jerky is marketed and known as a product for outdoor activities, like backpacking, hiking. It's used by the military in the field. Your hot dogs, cured meats, are not used that way. Again, another indicative of the factors that this Court listed in the Camelback decision. And so the question under Camelbacks, Your Honor, is even though the heading says cured, the Court has to come up with a common commercial meaning of cured, and then it has to ask whether the subject article in this case, beef jerky, has features substantially in excess of that. So just to remind us, so we have the more general heading of prepared or preserved beef, and under that we have the heading for cured, we have the separate heading for other. Is that accurate?  The meats here are preserved. I mean, the way it follows... In accordance with the headings. In accordance with the headings. That's right. But again, Your Honors, and I think the ARCO case is maybe the one that's closest on point, where the question was whether the mellorine dessert product, which had a dairy component milk, fit within the of milk subheading or the other heading. And the Court recognized that even though the product had milk in it, it had features substantially in excess of that. It was a fundamentally different product, and therefore it put it within the other basket provision. And here I think it's a straightforward GRI-1 analysis. If you agree with us that because beef jerky has features substantially in excess of your commonly cured meat, then you'd look at, well, what category does it fit in? It's straightforward. It fits within the other category. And I think this case, Your Honors, is different than Camelback and even the La Crosse decision in this respect. And those decisions, Judge Bryson, you dissented, pointed out, that the Court was setting aside a factual determination about the nature of the product. In this case, the Court of Appeals, that the Court of International Trade, never made that factual determination because it believed erroneously that the start and end of the analysis was that this was an A.O. nominee provision. So I think, although on the undisputed facts, I don't think it's disputed that beef jerky has a fundamentally different, much longer shelf life than your commonly cured meat and is a dried meat versus a moist meat. And on that basis, this Court could find that the Camelback analysis requires reversal and that the article has to go into the other category. It sounds like you're not even relying on GRI-3. You're saying you win on GRI-1. We do think we win under GRI-1, Your Honor. I mean, of course, the Court could send it back and say that it's a GRI-3, that there are different components to this product, at least insofar as it contains sodium nitrate in beef. But we think it is a GRI-1 analysis, and that was the analysis that this Court itself focused on in the Camelback decision. If you got into GRI-3B, then what you would be looking at is the essential character, and I think that you would reach the same result. And it would be a common-sense result to anyone familiar with a piece of beef jerky versus a hot dog, that these are fundamentally different products and that the essential character of beef jerky is as a dried meat, which is a shelf-stable product that you can put on your shelf for a year and a half and don't worry about it spoiling. And that's why it's fundamentally different. That's why it doesn't fall within the common commercial understanding of cured, and that's why it's removed from that area-nominee provision under this Court's decision in Camelback. And just to complete the prior thought, one possibility is this Court could find that the Court of International Trade didn't undertake the proper analysis under Camelback because it never looked to whether or not beef jerky has features substantially in excess and remanded for the Court of International Trade to make that determination in the first instance. Although, as I said, we think on the undisputed facts here, the Court could find and should find that beef jerky does have features substantially in excess and that those features does take it outside of the area-nominee provision. In which aisle would I find beef jerky? Your Honor, in my supermarkets, it's with the snacks, with the potato chips and the whatnot. If you want to find the hot dogs, you're going to have to go near the butter and the other refrigerated items. Thank you, Mr. Stern. Thank you very much. Mr. Van Der Weide. Your Honors, may it please the Court, this Court should affirm the trial court's decision that this is, in fact, a cured beef product. As Your Honor pointed out, we start at the basic four-digit tariff heading, which is prepared or preserved meat. We next go down to the six-digit subheading, which is beef that doesn't contain cereals or bread. Both parties admit to that. So the only dispute before this Court is whether or not it's cured or not. And by counsel's own admission in this argument, and it's briefed at the joint statement of material facts at the trial court level, it's cured. Now, what sorts of products are included in the other? In the other, I would submit to this Court there would be beef jerky that's not cured. I mean, there are different types of beef jerky that you have. You could have one that undergoes a curing process, like this product does, or there are other ones that are not cured. You could buy both at the store. Is there any dispute about those being included in other? I don't know if there's been a specific ruling issued on customs on the position, but I can stand here today and say it would make logical sense that if it was a beef jerky product that was not cured, it would go into other. So that other does encompass goods. But your opponent says that the beef jerky is not cured. It's dried. Well, it's cured and dried. It's both. It goes through both processes. It's not one or the other. It's first cured. It goes into a mixture of sodium nitrate and salt and other seasonings. It's cured for a period of 24 to 48 hours. Later on, it is dried. That's preserved. Yes. Which is preserved or cured, so I suppose that distinction doesn't help. But typically, beef jerky is predominantly dried. And so you say there are, in your view, there would be forms of beef jerky that would clearly enough be within the other. Is there anything else you can think of that would be another kind of beef, preserved beef? I know that there are other types of beef, certain meatballs that go into certain, you know, in a canned container, in an airtight package that is not cured that would go into another. There are certain rulings that I believe I pointed out in my, at least at the trial court, I submit supplemental briefing, if you'd like, Your Honor, on what other examples would fall into that. But it's not a provision that doesn't encompass certain goods. As long as it's prepared, there's a mixture in there, you know, there's something that's preserved, and if it's not cured, it goes into that provision. Or if it's not pickled, it goes into that provision. Then the provision would have to be that it comes under this category because it's preserved, whether or not it's also treated as jerky. Yeah, well, the provision assumes, the basic four-digit provision is that it is prepared or preserved. All these goods are prepared or preserved. Whether it's uncured beef jerky or cured beef jerky, it's prepared or preserved. And then it's beef, and then it's either cured or other. It's not cured or dried. Cured would encompass the dried. It's not cured, and then there's a dry provision, as I believe came up earlier. If there was that distinction, well, then maybe we would then go down to a further analysis under GRI 3. But under 1, this product is covered by the terms of cured beef under GRI 1. It can't be cured and not cured at the same time. If it's cured and not cured at the same time, that logically doesn't make sense. The only way we get to a GRI 3 analysis is if it was cured or dried, if those were the two provisions we had. Could you talk about the ARCO case? Well, in ARCO, it's asking, does melurine have the essential character of milk? That was the dispute before the court. It would be difficult to phrase it in terms of this case because we would be asking, does this cured beef jerky have the essential character of cured meat? They're both cured, so indisputably it is. Both sides admit to it. It seems an unhelpful analysis here where we have a product by both parties' admissions that it's cured. Well, I guess in ARCO, there was a product, melurine, which was made from milk but no longer retained, at least as the court ultimately concluded, the characteristics of milk. Sure. And the similarity, of course, here is that you went from the specific aonomany provision into another basket. Yes. So unlike Camelback, or at least unlike structurally the way Camelback was argued, there is a aonomany versus basket. But your distinction is that even though it may have been milk at some point, it wasn't milk when it got here. And here, this thing was cured beef from the moment it was first cured until now. It wasn't ever uncured. Exactly. You can't undo the curing process. You can't unmask it. As long as there's salt and sodium nitrate in the meat, it's cured. It stays cured. No amount of drying undoes that process, Your Honors. Okay. Any more questions? Thank you. Thank you, Your Honor. Mr. Geyer. Thank you, Your Honors. Just to pick up on ARCO, I mean, I think ARCO is exactly analogous to the situation. The product in ARCO had milk in it. That was undisputed. The question was whether or not it had features substantially in excess of that. And the court correctly concluded that it had milk in it. I mean, it had been processed in a way that it had become a product that was different, at least as the court saw it, from milk. I mean, you could say, suppose there's a category for petroleum products and another category for plastics. And something comes in, and it's made of plastic. You could say, well, it once was a petroleum product, and it was converted into plastic. That doesn't mean it falls under petroleum. Your Honor, I hear. I think that the question, and again, this is under Camelback, but it goes through to ARCO and Piltex and other cases, is whether or not, even though you could say that this has been cured, does it nevertheless have features in excess of that which change its identity? And I think it clearly does. I didn't hear any dispute on the practical question before this court that beef jerky is a fundamentally different product than your commonly cured meat. And that's why it falls outside the aonomic provision. One way to look at that is this is part of the interpretive exercise of what do they mean when they refer to cured meats? They meant, as this court has said, the commonly commercially known definition of cured meat. And that is, as the expert testimony in this case makes clear, and I think it's known to all of us, a matter of common sense. It's bacon, it's a hot dog, it's meat that is refrigerated, that is moist, and beef jerky in this case is fundamentally different. So you could say that the product in Camelback was a backpack. But that didn't mean it fell within the aonomic provision for backpack because it had features substantially in excess of that. You could say that the dairy product in ARCO had milk in it. But that didn't mean that it fell within the of milk category because it had features substantially in excess of that. And you could say that the comforter in the Pilotex case had cotton in it. But that didn't mean that it fell in the of cotton heading because it had features substantially different. But again, that was, as I recall, not an other basket. I think ARCO is the one closest on that. But I think if you go back and look at the analysis in Camelback, Your Honor, it's on page 1365 of the decision. The substantially in excess analysis that this court lays out for aonomity provisions isn't limited to the situation where you have two specific subheadings. And it wouldn't make sense to limit it to that situation. That analysis applies equally to the situation here where you have an aonomity provision here, the subheading for cured. And the question is, does this article fit within that subheading? And under the Camelback analysis, you would say, no, it's removed from that subheading because even though it's an aonomity provision, it has features substantially in excess of the typical item described in the subheading and therefore has a change in identity and it doesn't fit within that heading. That's the analysis that comes straight out of Camelback. And again, the Court of International Trade here, it basically recognized that beef jerky was different. And you can see this from pages 8 and 9 of its decision. But it never asked the question that it was required to ask under Camelback, which is whether those features were substantially in excess of the articles described in the aonomity provision, like a hot dog, and therefore they took beef jerky outside of that aonomity provision. It never asked that legal question that it was required to ask under Camelback. Instead, it believed, as government still advances before you today, that this is an aonomity provision, so you start and end with the fact that this has been cured. And that is, we submit, incorrect as a matter of law under this Court's precedence. And we would ask this Court to set aside the Court of International Trade's decision, at least send it back and ask it to undertake that essential analytical step. And we think the Court could go further on the undisputed facts, which were not disputed even by my friend here today, and recognize that because beef jerky is a fundamentally different product than your commonly cured meat like a hot dog, that it falls within the other basket under the tariff provisions at issue. Okay. Thank you, Mr. Garan. Mr. Van der Weide, the case is taken under submission.